```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
_____
                               :
UNITED STATES OF AMERICA       :
                               :    Crim. No. 03-354 (NLH)
     v.                        :
                               :
WILLIAM OSCAR HARRIS           :    Opinion
                               :
          Defendant            :
_____:
```

**APPEARANCES**:

THOMAS J. YOUNG
OFFICE OF THE FEDERAL PUBLIC DEFENDER
800-840 COOPER STREET - SUITE 350
CAMDEN, NJ 08101

    *Counsel for Defendant*

JEFFREY BRIAN BENDER
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

    *Counsel for the United States*

**Hillman**, **District Judge**

    Before the Court is Defendant William Oscar Harris' ("Defendant") Motions for Reduction of Sentence under the First Step Act 18 U.S.C. 3582 (c)(1)(A). [Dkt. Nos. 643, 648, 651]. The Court held a hearing on these Motions on May 7, 2021. For the reasons expressed below, Defendant's Motions will be denied.

1

**Background**

A jury found William Oscar Harris guilty of Conspiracy to Produce and Pass False and Fictious Money Orders and Producing Fictious Money Orders in 2004.  Defendant, and eight other defendants, were self-described Moors who claimed membership in the "Al Moroccan Empire"  - so-called "sovereign citizens" who owed no allegiance to U.S. laws.  Their scheme, which netted less than $100,000 in actual loss, had the more ambitious goal of extinguishing some $10 million in debts.  The late Honorable Judge Jerome B. Simandle sentenced Mr. Harris, an organizer of the conspiracy, to 188 months on October 22, 2004 after extensive jury findings.[1]

He has roughly four (4) years remaining on his sentence,[2] and he brought his first Motion to Reduce Sentence Under the First Step Act on May 6, 2020.  [Dkt. No. 643].  He filed an

---

[1] The Defendant has served a much longer sentence that original anticipated.  After the indictment and for a period of years after their convictions, the Defendant and several co-defendants filed baseless fraudulent liens in state courts in a campaign of retaliation against the judicial officers, federal prosecutors and others involved in the underlying criminal case.  In light of this extensive contumacious conduct, Judge Simandle stayed the execution of Defendant's sentence until he had purged himself of contempt which Judge Simandle later found did not occur until June 1, 2012.  Defendant's contempt of these proceedings lengthened his sentence by some 8 years.

[2] The Defendant has advised the Court that he anticipates that he will participate in a Bureau of Prisons program for early release to home confinement of elderly inmates that will result in his release to home confinement as early as November 2021.

additional Motion for Release on January 11, 2021. [Dkt. No. 648]. He appears now before the Court upon a counseled Motion for Reduction of Sentence Under the First Step Act filed on his behalf on February 9, 2021. [Dkt. No. 651]. The Government filed in opposition on February 22, 2021. The Government provided additional information on May 5, 2021, advising that Mr. Harris has twice refused to receive the COVID-19 vaccination.

**<u>Legal Standard</u>**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist

to justify compassionate release." *Sellers*, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

Defendant has fully exhausted his administrative rights in this case after applying to the FCI Terre Haute warden on April 9, 2020. The Warden has yet to respond. The Government agrees that Defendant has exhausted his administrative remedies, as required by the statute.

2. **Defendant has not established "extraordinary and compelling" reasons for his release**

Defendant argues that his age, generalized concerns of the COVID-19 pandemic, his race, and a skin condition present extraordinary and compelling reasons to warrant his release. Defendant is 78 years old and is currently incarcerated at FCI

4

Terre Haute, which, according to his most recent Motion, has suffered three (3) COVID-19 related deaths.[3]

The Government disagrees that Defendant presents "extraordinary and compelling" reasons for his release. First, they argue, there is no scientifically documented link between race and COVID-19 risk unrelated to socio—economic factors that may differ among races. Second, the Government argues that generalized concerns about the virus do not rise to the level of an "extraordinary and compelling" reason, and thus do not warrant a reduction in sentence. With regard to his skin condition, putting aside whether this presents a medical connection related to COVID-19 risk, the Defendant's medical records indicated the condition is well-controlled by medication.

The Government does acknowledge the Defendant's advanced age, yet argues that other Courts have denied motions for compassionate release from other elderly inmates. The Government argues that Defendant lacks a serious illness or injury that makes him particularly vulnerable to the virus, and

---

[3] Since his motion were filed, an additional inmate as died of COVID-19. As of July 12, 2021, FCI Terre Haute has had 498 positive tests of COVID-19 including staff and inmates. There have been no deaths among the staff and there is one current infection of a staff member as of the same date. There are no current inmate infections. *See* Federal Bureau of Prisons *COVID-19 Coronavirus COVID-19 Cases* available at https://www.bop.gov/coronavirus/ (last visited July 12, 2021).

5

this Court agrees.  Age alone is insufficient to constitute extraordinary and compelling circumstances warranting release. As the Government contends, Mr. Harris does not present any other issues, outside of his age, that present cause for medical concern within the confines of FCI Terre Haute.  See *supra* note 3.

The Government's most recent letter from May 2021 indicates that Defendant has refused the vaccine twice.  While this decision is troubling in light of well-established and accepted evidence that the available vaccines are both safe and effective, the Court will view this issue as a neutral factor in this case as the Court does not know the reason for this refusal.  This Court takes caution to neither punish nor incentivize this Defendant or others with respect to their acceptance or refusal to receive the COVID-19 vaccination by giving undue weight to that decision.

### 3. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could establish extraordinary and compelling circumstances for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.[4]  Here, they do not.  The § 3553(a) factors include as follows:

---

[4] The Court need not consider U.S.S.G. § 1B1.13 (policy statement) as the Defendant fails to provide extraordinary and

> 1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Defendant claims that he satisfies these several factors. He has been incarcerated for the last 17 ½ years and has less than four years remaining on his sentence.

The Government argues that these § 3553(a) factors weigh against the Defendant, and the Court agrees. Defendant's prolonged incarceration is primarily based on Defendant's "disdain for the rule of law" as noted in the Government's briefing. [Opposition, page 11]. Furthermore, the Government details that "Defendant also spent almost a decade violating this Court's orders in order to harass and victimize those involved in his prosecution," including effecting the credit history of an Assistant United States Attorney using liens and other manipulative and fraudulent tactics. The Court views these past activities of the Defendant as more than mere annoyances and is unconvinced that this behavior would subside

---

compelling reasons for his release and fails to demonstrate that the § 3553(a) factors favor release.

7

upon release.  This real risk of recidivism weighs against early release.  18 U.S.C. § 3553(a)(2)(C).  Moreover, early release would frustrate Judge Simandle's detailed, careful, and even generous findings regarding Defendant's obstructionist and contumacious conduct which lasted years, caused real harm, and continued as late as 2018 long after Judge Simandle had given the Defendant the benefit of the doubt and purged his contempt as of a much earlier date.[5]  Taking away roughly half of Defendant's sentence for contempt would not "promote respect for the law [or] provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Importantly, Defendant could have easily avoided this additional jail time if he had ended his offensive conduct earlier.[6]

**Conclusion**

---

[5] In 2015 through as late as January 2018, Defendant attempted to use a sham lawsuit in the District of Nevada to fix a date for the purging of his contempt earlier than that set by Judge Simandle.  Federal Courts in Nevada and Indiana recognized the litigation for what it was – a sham and frivolous.  See Viana V. Bailey v. William Oscar Harris, et al., Civ. No. 15-2279 (D. Nev.) and Bailey v. Harris, 17-mc-65 (S.D. Ind.).

[6] The only § 3553(a) factor which arguably favors release is Defendant's age.  18 U.S.C. § 3553(a)(1)(defendant's history and characteristics).  The other statutory factors are neutral or otherwise do not favor release.

8

For the reasons contained herein, Defendant's Motions for Reduction of Sentence Under First Step Act [Dkt. Nos. 643, 648, 651] will be denied.[7]

An accompanying Order shall issue.


Dated: 7/13/2021 /s/ Noel L. Hillman
At Camden, New Jersey NOEL L. HILLMAN, U.S.D.J.

---

[7] To the extent Defendant's second *pro se* motion seeks relief under Amendment 791 to the Sentencing Guidelines it will be denied. As the Government points out, the amount of financial loss defendant intended would have warranted a 20 level increase before and after Amendment 791. Even if the Amendment as applied would have lowered the specific offense characteristic calculation for loss amount, Defendant would not be eligible for the adjustment as Amendment 791 does not apply retroactively. *See* United States v. Brown, 694 F. App'x 62, 64 (unpublished).